OPINION OF THE COURT
Eugene R. Wolin, J.
In or about June 1978 plaintiff and defendant met and became acquainted. Their relationship soon evolved into one of sexual intimacy. During this period defendant employed a method of contraception known as an intrauterine device (IUD). In November 1978 defendant had her IUD removed. Two facts have been established and are conceded: first, that defendant did not inform plaintiff of the removal of her IUD and second, that neither plaintiff nor defendant employed any alternative method of contraception. The parties continued to engage in sexual intercourse and defendant ultimately became pregnant and gave birth to a daughter in September 1979. In May 1979 defendant commenced a paternity proceeding in the Family Court against the plaintiff. That proceeding was dismissed after trial. However, on appeal the Appellate Division, First Department, remanded the matter to the Family Court and directed the parties to submit to a human leucocyte antigen test. The results of this test were then considered by the Family Court, and an order of filiation was entered against plaintiff on May 23, 1984. Thereafter, on September 7, 1984, a temporary order of support was entered which requires plaintiff to pay child support in the sum of $100 semimonthly. Plaintiff has now com *746 menced this action alleging that he was defrauded by defendant and seeks as damages the amount of child support he will be required to pay as a result of the filiation order. The matter is now before the court on the motion of plaintiff and the cross motion of defendant for summary judgment.*
On this motion plaintiff asks the court to restrict its view to the traditional elements of the torts of fraud and misrepresentation and argues that those elements have been satisfied by admissions of the defendant made in the paternity proceeding. Even assuming that plaintiff was defrauded, the matter is not as limited as plaintiff urges. There are broader policy considerations at issue which mitigate against a purely legalistic view of the relationship of the parties.
Paternity proceedings are governed by Family Court Act, article 5, § 511 et seq., which establishes the welfare of the child as the primary concern (Matter of L. Pamela P. v Frank S., 59 NY2d 1 [1983]; Schaschlo v Taishoff, 2 NY2d 408 [1957]). Each parent of a child born out of wedlock has an obligation to provide the necessary support and education of the child (Family Ct Act § 513). As part of the filiation order, the court must make a finding with respect to the ability of the individual parent to pay a fair and reasonable sum for the support of the child, and may apportion the financial responsibility between the parents (Family Ct Act § 545). Given this emphasis on the welfare of the child, the fraud and deceit of one parent is irrelevant to the determination of the necessary support and is therefore not a defense in a filiation proceeding (Matter of L. Pamela P. v Frank S., supra). The court is convinced that such conduct, however unfortunate in its consequences for the deceived party, should not be actionable in this State.
What is at issue here is a relationship between mature adults which includes consensual sexual intercourse. To attempt to define their conduct in terms of misrepresentation, reliance and scienter is misguided. Often the determinative factor may be completely subjective. And as such it is an inappropriate area for either governmental intervention or judicial interpretation. Courts which have considered the question have found it to be intertwined with an individual’s right to privacy and have declined to interject the State into an area as personal as the practice of birth control (Matter of L. Pamela P. v Frank S., *747 supra; Stephen K. v Roni L., 105 Cal App 3d 640, 164 Cal Rptr 618 [1980]). Clearly there are privacy interests involved which would require a cautious approach, however several other points also deserve comment.
Family Court Act article 5 is a recognition by the Legislature of the importance of the welfare of a child born out of wedlock. Parents of such a child have an obligation to provide the necessary support for their child. This is an obligation which is imposed by law and exists independent of any intent or of any fault with respect to the pregnancy. The statute also permits the court to apportion the support to be paid based upon the financial means of each parent. To allow one parent to utilize a plenary action to deflect the statutory obligation onto the other would render article 5 nugatory. It would in essence reinstate the defense of fraud in a support proceeding and could, if successful, jeopardize the welfare of the child by reducing the financial means of the parent found to be at fault.
In addition the court is convinced that if such a cause of action is sanctioned, it will serve as a vehicle for much vexatious and fraudulent litigation. Representations of the sort needed to be actionable will rarely be a matter of public record. Conceivably they will be made during the course of a rather private conversation between the parties. As such the trier of fact will be presented with an allegation and a denial and little else. To find that such a suit would appeal solely to the prejudices and sympathies of the trier of fact is to state the obvious; proof by a preponderance of the evidence would be exceedingly difficult.
Finally, the court is not persuaded that payment of support for a child, unwanted and born out of wedlock, constitutes an injury which may be redressed. The judiciary should not attempt to regulate all aspects of the human condition. Relationships may take varied forms and beget complications and entanglements which defy reason. Wrongs which occur in this context admit of no simple remedy. It is doubtful whether the court could fashion an order which would effectively resolve all the issues and make the parties whole. Further, the possibility exists that judicial intervention will exacerbate the initial wrong in some unanticipated way.
Therefore, although declarations of public policy are more properly made by the Legislature or by the appellate courts, the court holds that the attempt by one parent to ascribe liability in tort for the birth of an unwanted child conceived in a consensual sexual intercourse, offends the public policy of this State. The *748 complaint thus fails to state a cause of action as a matter of law and must be dismissed.
Accordingly, the motion of plaintiff is denied and the cross motion of defendant for summary judgment dismissing the action is granted, with costs and disbursements.

 Plaintiff has appeared by counsel, however, defendant appears pro se. Her papers are labeled a “verified answer in the form of a demurrer.” For purposes of this motion the court will treat those papers as a cross motion to dismiss.