OPINION OF THE COURT
William L. Underwood, Jr., J.
The case at bar presents the following question: May a man, voluntarily cohabitating with a woman falsely claiming to practice birth control, maintain a cause of action against the woman when she becomes pregnant and delivers a child?
Plaintiff asserts the following: Plaintiff and defendant met *884 in 1985, and soon developed a romantic interest in each other. Between 1986 and 1988, this romantic interest manifested itself in sexual relations between the parties. Prior to their congress, however, defendant engaged in a canard. She told Mr. F. that their activities would be without consequence because she was practicing birth control. This representation was utterly false and made with the intent to deceive plaintiff. Ms. M.’s subterfuge succeeded and Mr. F. was induced to begin a carnal relationship with her. The defendant subsequently became pregnant and gave birth to a child. After the birth of a healthy son, plaintiff suffered psychological and emotional trauma. He "became defensive, depressed, nervous, and extremely agitated, lost sleep and underwent a personality change.” Plaintiff commenced the case at bar and alleges two causes of action: fraud and intentional infliction of emotional distress. Defendant moves to dismiss for failure to state a cause of action and moves for summary judgment in her favor and against the plaintiff.
On a motion to dismiss for failure to state a cause of action, the court is mandated to construe the complaint most favorably to the plaintiff and accept his or her factual allegations as true (Rotanelli v Madden, 172 AD2d 815 [2d Dept 1991]). At this point, it is premature for the court to consider the merits of plaintiff’s claim. Rather, we are addressing whether he has stated a claim at all (Long Is. Region Natl. Assn. for Advancement of Colored People v Town of N. Hempstead, 102 Misc 2d 704 [Sup Ct, Nassau County 1979]). By contrast, summary judgment is the procedural equivalent of a trial (LaGrega v Farrell Lines, 156 AD2d 205 [1st Dept 1989]). Before granting this extraordinary relief, the movant must show that there are no factual issues before the court and that he or she is entitled to judgment as a matter of law (supra). In its determination the court accepts the respondent’s averments as true and will deny the motion upon a finding that a material issue of fact is "arguable” (Museums at Stony Brook v Village of Patchogue Fire Dept., 146 AD2d 572, 573 [2d Dept 1989]). In the case at bar we have accepted (for the purposes of the instant motions) plaintiff’s allegations and thus are presented solely with questions of law.
Prior to 1961, it is questionable whether a claim for intentional infliction of emotional distress would lie in the absence of other tortious conduct on the part of a defendant (Restatement of Torts § 46 [1934]). In Halio v Lurie (15 AD2d 62 [2d Dept 1961]), the Appellate Division embraced the enlightened *885 academic view that "intentional infliction of serious mental distress without physical impact can constitute an independent tort which is actionable per se” (supra, at 65). In order to maintain a viable claim for this tort, however, a plaintiff must demonstrate that the defendant engaged in conduct: " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community’ ” (Fischer v Maloney, 43 NY2d 553, 557 [1978]).
Despite its acceptance as legitimate cause of action, New York has been loathe to allow this theory of tortious liability to be applied in cases arising from marital disputes (Weicker v Weicker, 22 NY2d 8 [1968]; Eller v Eller, 136 AD2d 678 [2d Dept 1988]). The public policy reason for this limitation stems from the Legislature’s 1935 abolition of lawsuits for alienation of affection (L 1935, ch 263; Civil Rights Law § 80-a [formerly Civ Prac Act § 61-b]). To allow an action sounding in intentional infliction of emotional distress predicated on events which occurred in a marital context would subvert legislative intent in outlawing this type of lawsuit (Weicker v Weicker, supra). Although the parties in the case at bar were never married, their relationship was so akin to a conjugal one that the same public policy considerations which prevailed in Weicker (supra) are found in the matter sub judice (Artache v Goldin, 133 AD2d 596 [2d Dept 1987]; Baron v Jeffer, 98 AD2d 810 [2d Dept 1983]).
In addition to their personal relationship, the gravamen of plaintiff’s allegations is contrary to public policy. In essence, plaintiff asks the court to judge the actions of two mature consenting adults and delve into the motivations underlying an intensely personal decision to exercise the right to procreation (Matter of L. Pamela P. v Frank S., 59 NY2d 1, 6 [1983]). It is inappropriate for the court to intrude into an intimate relationship in an attempt to substantiate what is tantamount to an action for seduction (Frank V. v Cynthia C., NYLJ, Jan. 28, 1992, at 21, col 3).
In order to maintain an action based on the theory of fraud, the plaintiff must prove scienter (Jo Ann Homes at Bellmore v Dworetz, 30 AD2d 837 [2d Dept 1968], mod 25 NY2d 112). The same public policy rationale which prohibits an action for infliction of emotional distress also renders a fraud based claim untenable (Douglas R. v Suzanne M., 127 Misc 2d 745 [Sup Ct, NY County 1985]). We will not allow a cause of action which rewards a party for his irresponsibilities and encour *886 ages a disturbing curtailment of the right to privacy. The result will be fraudulent litigation which seeks redress for questionable damages (Douglas R. v Suzanne M., supra). Therefore, defendant’s motion for summary judgment in her favor and dismissing the action is granted with costs and disbursements.